Good afternoon, Your Honors. May it please the Court, William W. Palmer appearing on behalf of Plaintiff Appellants and Consolidated Cases 07-17223 and 07-16902 in the Taylor v. Westly case. Seated with me is my colleague, Daniel J. Culhane, who's also making an appearance. At the outset, I'd like to reserve five minutes to respond to the opposition. I'll keep this short. I have roughly a half-dozen points. But in essence, here's what we've learned during the seven years of this litigation. In short, the Cali — yes, Your Honor. Counsel, we — excuse me, counsel. Yes. We have heard and decided the prior cases. And what you now have at issue are the changes made by the State of California in response to your prior actions in which you prevailed. And show us now where Mullane v. Central Hanover Trust applies and where you feel that they are outside the range of constitutional reasonableness. Your Honor, at the root, the State of California Comptroller's Office disputes that Mullane and Jones v. Flowers apply to the takings at issue at all. Counsel, could you direct us to the sections of the statute that are responsive to Judge Beezer's question? Yes, Your Honor. It would be Section 1531 of the Code of Civil Procedure as modified by SB 86, which was a recently passed statute. The fundamental problem with that statute is that it provides only direct mail notice. It's sent to addresses that are stale addresses unless the owner happens to be a current California taxpayer. There is no viable safety net in the form of publication of names. The respondent's or the appellee's brief is misleading where they talk about publication. The only notice that they are providing is the same notice that this Court expressly rejected in Seattle in July of 31, 2007. As to publication, they are only providing generic publication that directs owners to a searchable website. That's the only publication. I must have missed something. I thought what they did now, what they did before, was nothing but a notice in the newspaper saying there was a website. Correct. No notice to individuals. And I thought this time they mail notice to the individual either at the last known address that the holder has or the tax address, plus they have the notice in the paper saying there's a website, plus they publish the names on the website. Is that right? Your Honor, the only names that are published on the website are in a searchable website. It's like a locked room. You have to go to the website, assume that you have lost property, and then search the database for your name, so your name will not pop up. Are you saying there's a secret password that you need? No, you have to go to the... You said it was locked. Well, in order to enter the database, you have to go to a website, and then you have to begin entering your information into the website to look to see if you have had your property taken. In other words, it's not like traditional publication notice where the name is laid out for the public to see. So what? Why does that matter? It matters from the standpoint that it puts the onus on the property owner to search for the notice. It doesn't convey any notice at all. In other words, if you don't receive that direct mail notice, if you aren't a California taxpayer, then you will not receive any notice. There will be nothing to tell you your property has been taken. You would have to say to yourself, well, I think I'll check the California website today to see if my property has been taken. In the traditional Malayan standard, they would publish that name in the newspaper, and it would give a description of your property, and it would be calculated to reach you. So that even if you- Why doesn't the mail do that? The mail, Your Honor, if the mail- First of all, this process assumes that the only reason the property is being delivered to the state is that the holder does not have a current address for the property owner. So if the controller turns around and simply mails a letter to that address, presumptively it's stale. I thought the holder was obligated to advise the state if, for example, a stockholder had not cashed a dividend check for a period of time. That's the criteria that they've used, Your Honor, to assume that the property is abandoned. They've created criteria to draw an assumption that someone's abandoned their property. One of the criteria that you noted in Taylor 1 is if somebody doesn't cash a dividend check, then they say, okay, that person's abandoned their property, and it's taken, and it's sold. When we appeared in Seattle, they were providing no notice at all beyond those generic ads in the newspapers saying, we have unclaimed property. Now what they've done, and this does not meet the Malayan standard, is they're saying we'll send a letter to that presumptively stale address, but we'll back it up by checking the current California taxpayer roster. I don't understand why the letter doesn't meet the Malayan standard. Well, the reason that it doesn't meet the Malayan standard, Your Honor, is that there's nothing to back that up. There is no safety net of the publication notice below it. So if you do not receive that letter, your property is gone. Counsel, is it your expectation that California is required to publish in every newspaper all over the world to find people that are living in Hong Kong or Tibet or wherever it may be? Well, my problem from the outset with this ---- I'm sorry, Your Honor. I didn't let you finish. Is that the notice you want given or think must be given? The notice that we believe should be given is nothing less than the Malayan constitutional notice. If I have an address that comes to me from ---- Counsel, that gives you absolutely no force with me. I mean, we're deciding whether it's the Malayan notice. You telling us that it isn't doesn't show us that it isn't. I'm curious about the answer to Judge Beeser's questions. I will give you the answer, Your Honor. If I have an address of a person in England, for example, I'm taking his property and the address is in England or is in Arizona or is in Seattle, Washington, and I know that that citizen is not going to get proper Malayan notice, that I'm just going to send them a letter and presumptively the address is already stale, that person will have no opportunity to claim their property. If I were the California Comptroller, right at the outset, I would say to myself, why am I taking property from a man in England? Why does he fall within England? I apologize, Your Honor, I couldn't hear. How do you know the property is in England? How does the Comptroller know it's in England? Because the addresses from the holders indicate where the person is located. As you said a moment ago, Judge Beeser, that's how they know the person's in Hong Kong. It has a Hong Kong address on it. Do they have to publish in a newspaper in England? My position on that, Your Honor, would be why are they – if I can't assure that that person is going to get constitutional notice, I should not be taking that property. Could you quit talking about the law for a minute and talk about the facts? The facts. Do they have to publish in England or don't they? They do not, Your Honor. In the case of – they do not have to publish in England. Under the current law, they would simply send a letter to the last address. The man in England obviously would never have paid taxes in the State of California. Are you saying that under – now we get back to the law. Are you saying that under Mullane they're required to publish in England? They would be required to assure that they used the means of someone actually desirous of reaching that person in England. Okay? If they're going to take property from someone in England, then they're going to have to follow a process that protects that citizen in that other state or country. It could just as well be a person in Arizona or a person in the State of Washington. Where should they publish? You're saying that what's defective about the new statute is it does not require publication in a newspaper in the traditional way. What newspaper should they publish in or do they have to publish in? Well, what newspapers? Well, if I were the controller, they could publish in the publications that would reach those people, general national publications or international publications if they wanted to go to that level. But there is a twist where we could strengthen Mullane and this notion of publication. If they were to run the names in a format just in a newspaper, that will reach people in those other countries. It will because we take advantage of the Internet. The problem with the controller's current method is they have everything in a website, in a searchable site. If they were to, for example, publish all the names in a newspaper, that has the added advantage of reaching everyone in the world. It's not as in the old days where it would only reach a county. I'm missing something here. In a short list of names like the Fairbanks-North Star Borough property tax list, I can find my name pretty easily alphabetically. But California is bigger than the Fairbanks-North Star Borough. I would think it would be a lot easier to find my name in a database where I could just type in my name. What's the matter with that? The defect there, Judge Kleinfeld, is that you would not know to go to that database. You would have to have to think to yourself, OK, I need to. Yes, Judge. Judge Hawkins has been trying to. I apologize, Your Honor. You don't need to apologize. My question is this. Do we know the numbers we're talking about, the percentage of people with unknown addresses? Well, the only reason. That might fall through the cracks? Well, the percentage of people in other states and other countries I would estimate in the range of 10 to 15 percent of the existing names. In other words, there's 8.7 million people. So roughly 1.2 million of those people who never receive notice would be living in other states and other countries, roughly 15 percent. That would be of the existing pool. Now, on a go-forward basis, if California continues this process, then that same percentage in the future ad infinitum would continue to not receive any malign notice. Do we know what the comptroller does when they get a letter back that says that the person is no longer at this address? They will hold the property for a fixed period of time under their current law. That's 12 and a half months for stock. And then they will sell the stock. In the case of the contents of a safety deposit box, at the end of 18 months, they will auction the contents off on eBay and they will shred the property that has no value. It will be permanently destroyed. What if the letter comes back and it says no longer at this address, but they've moved to address B? What does the controller do? My understanding is under the current practice, they do no further follow-ups. There is only one letter mailed. It will be mailed to either the address that the holder provides, the company, which is presumptively stale, or they will go to the California tax roster. And if you, if an individual happened to pay taxes in the state of California, they will have a new address and they will mail a single letter to that new address. So, for example, if they had two questionable addresses, they would mail one letter. If they receive the letter back, there's no follow-up. Thank you. So you're saying if they have two addresses, they only send one letter? If they get one address from the holder and one address from the tax rolls, they'll only send one letter? No, what they do, Your Honor, is if they check the tax rolls in California, again, Judge Beezer and Judge Hawkins, if you had property come to the state of California and you hadn't paid taxes in the state of California, you wouldn't be on our tax rolls. But if you happened to be, then they would assume that the tax database is more accurate and they would mail a letter to that address. They would not mail it to the old address provided by the holder because they would presume it's stale, as they should. Over the last seven years, we've talked about notice. The comptroller has never viewed the private property as held in trust, belonging to other people, and still doesn't understand his role as trustee. In fact, if you were to look at this last year's State Comprehensive Financial Report for 2006. Counsel, I'm trying to sort out something that applies to the argument you're making now. I'm trying to sort out the extent to which we should review this now as an as-applied challenge and the extent to which we should regard it as a facial challenge to the statute. And I'm inclined to view that through the lens of our standard of review for preliminary injunction. So the conclusion that tentatively leads me to is that we review the denial of a preliminary injunction for abuse of discretion, but it leaves open the possibility that a final injunction may need to reflect evidence you produce on the mailings in order to tailor the required notice. What am I missing? Because on the facial challenge on its face, Your Honor, this statute does not meet the constitutional threshold. If you do not put in place an injunction starting June 15th, they will begin selling off the property and destroying the property. So in the event that we're wrong, that in the event that in the end of this case we prove on the merits that this was, the whole process was unconstitutional, that it facially, the statute was defective, we will have sold in the range of $500 million to $1 billion in private property for however long this case takes. I see I'm almost down to three, four minutes, and I'd like to reserve the balance, Your Honor. Thank you, counsel. Thank you. Good afternoon. Robin Johansen on behalf of the defendants. I'd like to try to answer some of the Court's questions, and if I skip any, please remind me what they were. I have an additional one for you on the appeal that's consolidated. Yes, Your Honor. The attorneys' fees appeal. The judge denied attorneys' fees because the case isn't over. However, when I look at the Supreme Court decision in Floyd, I forget the name at the moment. Unfortunately, Buckhannon, that's it. In Buckhannon, what we need to look for is some judicial compulsion that made the State do what it did, as opposed to the State doing what it did just in response to a threat of a lawsuit. They have to have been awarded some relief by the Court. Now, it seems to me the only reason what we have to look at here is the plaintiffs won two decisions in the Ninth Circuit, and after the second one, it was a second reversal. They got an injunction in accord with our directions from the district court. Why isn't – and then they changed the statute. They didn't change the statute just because plaintiffs privately squawked, as in Buckhannon. Why isn't that somebody who's been awarded some relief by the Court? And what's more, why shouldn't attorneys' fees be awarded now because that part of the case is all over. There won't be any more litigation about the constitutionality of the prior statute now that the State's passed a new one. They won. Your Honor, as to your first question, we agree that Buckhannon is not controlling here, and we have not argued that to the Court. We agree that there has been a legal alteration in the relationship of the parties, and that under this Court's precedence involving preliminary injunctions that become moot, then eventually the plaintiffs as prevailing parties may be entitled to attorneys' fees. The question is whether they are entitled to interim attorneys' fees now, and whether under the showing that they made to the district court, they are entitled to attorneys' fees. Does that mean that if you win the substantive appeal, the merits appeal now, and we affirm the denial of the preliminary injunction, there will then be a final injunction or not, depending on whether the district judge thinks any further compliance measures are necessary, and then the plaintiffs will be entitled to attorneys' fees for the work they've done up to the statutory change? Yes. But that doesn't mean that they will be entitled to those attorneys' fees as an interim award, as opposed to waiting to see the degree of their success on the entire case. That is a very different question. And while interim awards of attorneys' fees are clearly within the district court's discretion, we have found no case where a district court was reversed for denying an interim award. You said two things just now. One is they're not entitled to interim fees, and the other is that whether they're entitled to fees, if I understood you right, for the work they did up to when the statute was changed depends on what happens from here on. The degree – yes, Your Honor, and it's because of the question of limited or partial success. Once this case – I don't understand. Why wouldn't they get attorneys' fees for what they did up to when they got the statute amended, and then they may have wasted their time subsequently? Well, because the question is whether they're entitled to all of the attorneys' fees that they're claiming, which involved taking these two appeals. Remember on Taylor 1, Your Honor, there was a lot of question about whether they were entitled to retrospective relief. And this Court held they are not. But that hasn't fully been resolved in the court below. They're still seeking damages. So the question of partial success is very much at issue here. And from the district court's point of view, rather than trying to determine at this stage of the proceedings how much of what they did up to this point is in fact attributable to their success on the preliminary injunction, is something that would be – As of today, the district court has denied all attorneys' fees, right? As of today, the district court has denied an interim award of attorneys' fees. We're to decide when the prior cases were concluded, should the district court address the question of attorneys' fees as an initial matter then, right? That's the issue, Your Honor. It's over. Okay. Well, then why shouldn't we remand back to the district court and tell them at the conclusion of the prior cases, as of that date, fix an attorney's fee if one is to be awarded? If I'm understanding Your Honor's question correctly, by the prior cases, are you referring to the court's first opinion in Taylor 1 and then the second opinion in Taylor 2? Or by – I'm sorry, I don't understand. Water over the dam. Yes, and – All that work has been done and it's been concluded and time goes on and the State hangs on to the money. And the lawyer's funding this lawsuit. Well, Your Honor, and the issue is – What's going on. I think the issue is whether there is a right to an interim award as opposed to an award at the conclusion of the lawsuit. And that's a case – It's quite the critical thing. I thought it was all discretionary. It is discretionary, Your Honor. And as far as we can see, there's no right involved. There – you know, the fact that we cited all these cases about interim awards not being – If it's discretionary, then we would review for abuse of discretion. Is that right? Correct. And – We could say, well, we could go either way on that, couldn't we? I'm not sure you could under these circumstances, Your Honor, because of the – Is there a right not to pay an interim attorney's fee? Not that I know of, Your Honor. But the question would be whether there are guidelines that are appropriate for the district court to exercise in deciding whether or not an interim award is required. The plaintiff doesn't have a right and the State doesn't have a right. We just review discretion. As far as – well, Your Honor, the traditional rule is that attorney's fees are awarded at the end of the case once it's clear what the degree of success has been. So interim awards are the exception rather than the rule. So then the question becomes what guidelines would this court issue for district courts to exercise in deciding whether or not to pay an interim attorney's fee? And it seems kind of obvious that we whip the State of California around the head and shoulders to the point where they passed a new law. I'm sorry. The question would be then what about the rest of the case? And how much of the effort that went into drafting the complaint, having that first appeal, taking all of the other issues that the plaintiff's attorneys have spent, they say, 7,000 attorney hours working up, how much of that is reasonably attributable? I'm sorry, Your Honor. Counsel, my problem is this. The work has been done. A result has been obtained. And you say the district court has no obligation whatsoever to even look at his fee application and make a decision as to whether all or part or any part thereof should be awarded and paid by the State of California. And you say that nothing has happened. Well, plenty has happened. The Office of Forfeiture has completely changed its rules and regulations pursuant to a statute. So there's been a result obtained. Now, whether 7,000 hours were necessary to do that, that's for the district court to take testimony and decide on the basis of expert witnesses, affidavits, time records, and just the regular routine that you go through on an attorney's fee. But I don't see any impediment to an award at this time for the prior litigation before this case started. And, Your Honor, I do not mean to say that nothing has happened. We certainly agree that the preliminary injunction has happened. We believe that the change moots the noticed issue. And we believe, then, that the district court can and should and will give us judgment on the current law as satisfying the constitutional requirements. Yes, Your Honor. So Judge Hawkins is trying to answer that. Yes, I see. Thank you. If we were all in the same room together at the conclusion of Judge Beezer's question, I would have said amen. But my question is this. At the start of your argument, you said you were going to respond to some of the questions that the panel asked and the responses that your opponent gave on the current operation of the program. Can you do that now? Yes, Your Honor. Thank you. Your Honor, you asked what happens when a letter that we have sent, a pre-acheat letter, has been returned. And if an address is given, I would be very surprised. And here we are, you know, up here without actual testimony. But there is nothing that, in the record, to support Mr. Palmer's statement that we would not send to the new address, and everything to suggest that we would. In addition, what we have is the address going up, the owner and address and the property itself, up on the website immediately as backup notice for the owner, which puts us in the situation in Mullane, where the court talked about where the address and the owners are unknown. Publication is sufficient. So that's what we're doing. When addresses, when I can give the court, again, stop me if you would prefer me not to get into matters that are  I don't have any extra record, but I do have a little bit of information about the number of pre-acheat notices that were returned as of the end of February. We had sent out 595,841, and of those, 75,612 were returned. I don't have any extra record about how many of those had other addresses. But the, excuse me a second. Does the new statute require or do the current practices of the controller envision publication in a newspaper of general circulation in the state where the person last resided, if that's not California? No, Your Honor. We are not, if by publication the court means a list with names and addresses, the statute does not permit that. We do publish the, what we call generic ads, informing people about how they can contact the controller's office and how they can go on to the Internet. And those are published widely. I don't have the figures for where they are published, but we do not publish the actual names and the address in newspapers. And in the record you will find the evidence that we put in about, from the census, about how newspaper circulation is shrinking while at the same time Internet usage is growing by leaps and bounds. The other issue, and I think one of the judges raised this, I think Judge Kleinfeld, the question of the millions of names, the difficulty for someone being able to find his or her name, particularly if it's a common name, in a list of millions or hundreds of thousands or tens of thousands. You could put them in alphabetical order. Well, yes, Your Honor, we certainly could. But the size of the print. I'm thinking, I was trying to think why could it matter. And I was thinking if my name showed up in the borrowed property tax list, other people would kid me because they'd seen it there about not paying my property taxes. And somebody else might notice it. But if it was just a database where I had to look for my name, they wouldn't notice it and kid me about it. And also, if it could vary according to whether it was a Kleinfeld or Andrew Kleinfeld or Andrew J. Kleinfeld database might say no such person because I typed in my name in the database. And so I might have typed it a little bit differently. Or it could be that the clerk at the S.G.E.A.T. office misspelled my name as a lot of people do and wrote a Kleinfeld instead of Kleinfeld. And then I would never find it. Well, Your Honor, if I have some is there is there any way a person would be likely to get tipped off if any of those things happened? Well, I mean, it's a one-time only deal. Whereas the website is there constantly. Any time of the day or night. Three times, actually. Well, yes, Your Honor. But I mean, it's chance alone, as the Mullane court does. I mean, it's a one-time only deal. But I mean, it's chance alone, as the Mullane court does. Whereas with the website, it's there. It can be searched from any place in the world. So that the chances of someone in England, for example, being able to find whether or not he has property that is being held by the state of California are much greater. I'm sorry. I'm not sure what I understand what you mean by add an alphabetical list. It's a searchable database. You could have a list just like you'd find in the newspaper on the California. Oh, I see. It would be a very, very long list. Whether one could get. Is that a problem? I mean, it's just the electronic. No, I don't believe it is, Your Honor. And I don't know, for example, whether one has the ability even now to go onto the website and simply download the whole thing. I can't answer the court's question. We do have one other thing, Your Honor, that I think the court should be aware of. And that is that, you know, there's a whole industry of people who are what are called air finders who search these lists on a regular basis. And then contact people themselves. So they charge a fee where we tell people, you know, you don't need to pay anybody to get your property back. But if the court were to go onto the list and look for, you know, your friend's names or whatever, which people do, that's another way that the word gets out. So the searchability of the website, in our view, is a much greater advantage over what we did back in the late 80s and early 90s, because it has the ability to reach so many more people. We had over a billion visits to the website in one year. That's very, very different than just publishing something that people may or may not see. Mr. Palmer said that he said that there are 15 percent of the names in other countries. I have no basis for that. There's no site. There's no evidence in the record about that. The question, I think, that you, Judge Kleinfeld, raised with Mr. Palmer about whether we're dealing with an as-applied or with a facial challenge here, goes directly to this question of what kind of evidence should the court use to decide the legitimacy of our particular notice requirements. And if the plaintiffs can produce evidence that an as-applied challenge means that a significant group of people are somehow being injured, then I think the court has to look at what does Mulane require. And if I may, just Mulane talked about the reasonableness standard as being the criterion is not the possibility of conceivable injury. You told us a few minutes ago that out of 600,000 notices, or a little less, by the end of February, the criteria is not the possibility of conceivable injury. That's about one-eighth. That means about one-eighth of the notices do not reach the owner of the property. Is there anything besides the searchable database for that one-eighth? Well, Your Honor, at this stage, what we have then after our — what Mr. Palmer has wrongly characterized as an 88-person locator unit, the locator unit is actually four people and a manager, but they do go out and they are trying to locate people. And they are working manually, as we would put it, to find people. The fact that the notices have been returned means that our notice did not reach that person. But remember, we also have the holder's notice, and we don't know necessarily whether or not that notice reached the person and the person simply ignored it. So in the sense of the 75,000, we have now, with those people, we are in the position that the State of Georgia was in in Jones v. Flowers. And it was there that the Supreme Court said, okay, once it's been returned and you know it wasn't delivered, your notice wasn't delivered, what reasonable steps do you have to take? And the court expressly said, you are not required to look in the phone book, you are not required to look in the tax rolls. We have already done that with the tax rolls where we can. So we are going way beyond Jones v. Flowers. Now, I'm running out of time, but I want to ask the Court also to take a look at one case that we did not emphasize as we should have, and that is a post-Mulane case that discusses Mulane in the context of a permanent escheat. All right, Standard Oil Company v. State of New Jersey, 341 U.S. 428, says that publication notice is adequate for a permanent escheat program.  Thank you, Counsel. Quickly to respond, the cases have already addressed. As to the fee question, that's answered in the Hensley case, which is Hensley v. Hanrahan. The purpose of the interim fee was to allow the plaintiffs to complete their case. Judge Shub, the district court, erred when he held we were not a prevailing party. I think that's undisputed. The quote is accordingly a prevailing party. Quote, should under ordinary circumstances recover an attorney's fees unless special circumstances would render such an award unjust. And that's the Hensley quoting Newman v. Peggy Park Enterprises, 390 U.S. 400-402, 1968. Your Honor, from a practical standpoint, Congress intended the interim fee provision to allow us to prosecute complex civil rights cases. If there were no interim fees, you know, one solution would be the case would come down, I'd talk to my clients, and that would be the end of the litigation, because we couldn't afford to push forward. So that's the fee issue. There were a number of misstatements that I need to be very clear on. What we're asking for is publication notice, traditional Malayne publication notice. There is, as you noted in the Taylor 2 decision, and I can give you the site to your own decision, I don't mean to read back your words, there is no authority for a searchable website. Now, there were a number of misstatements. Judge Hawkins, you asked about publication. As each of us in this room knows, once the names are published in a newspaper, they're on the World Wide Web forever. You can go and run your name, you'll see the articles that list you going back years. So if the state published the names in the traditional Malayne format, as I mentioned at the beginning, they would have the added benefit of the Internet. It wouldn't be just a single day publication. The publication names, published names would remain on the Internet forever. There were misstatements about the searchable website. There were misstatements about spellings, and my colleague, and I know she didn't mean this intentionally, said that it would pull up different variations of your name. That's not accurate. The state auditor, and this is part of the record in front of the court, noted that the controller has at least three different databases. Not that they were three years behind loading the documents onto their website. That they had microfiche, that they had books with records in them. And in the case of Mr. Lusby-Taylor, he had two accounts, one in the name Chris Lusby-Taylor, all run together, and the other in the name Taylor Chris Lusby, all run together. If he ran the name Taylor from England, he wouldn't have picked up either accounts. The only reason he found his accounts in California is that another man from England, Stephen Tucker, who's a plaintiff in the Seaver case, found his accounts in California. Stephen Tucker, who's a plaintiff in the Seaver case, Judge Hawkins, happened to see Mr. Taylor's name misspelled in all the other Intel shareholders when he was looking for his, and called up Mr. Taylor in England and said, you've got stock here in California, too. The statement, so any typo in your name, or if you, for example, owned a corporation, and you were looking for your corporate assets, they wouldn't be under your name. Now, at least, Judge Kleinfeld, as you noted, if it's published in a newspaper, which would then be posted on the World Wide Web, you might pick up a Google alert or a Yahoo alert, but at least you'd have a shot at getting your property. Why couldn't they skip the newspaper and just publish the alphabetical list on the web? I think that's what that... You may be telling us the virtue of publishing the whole thing, say, in the Contra Costa Times, is the Contra Costa Times would itself post it on the web. That's right. Why couldn't the California Comptroller's Office just put it on the web? If I wanted to take a shot, I could say, yes, they could, but I'm staying within the United States Supreme Court precedent where I know that traditional publication... One thing Malene did not say is that publication on the web was inadequate. There being no web at the time. Correct, Your Honor, yes. But we did have the Jones v. Flowers case. We never got into this web discussion. I'm simply saying that if they just do the traditional publication in a California newspaper, we will get, assuming they do it properly, as you noted, posting all the names, then we will get the added benefit of the World Wide Internet to reach people in other countries. As it stands now, the only thing they do are those generic ads saying you should check a searchable website. And I put in the record the California State Auditor's Report that says that large categories of property are not posted at all on that World Wide Web. Thank you, counsel. Counsel, you've exhausted your time, so unless my colleagues have further questions, I think we've completed the argument. My colleague went over by... Can I just have one minute to conclude? Take 30 seconds. Okay. Thank you, sir. I'd like to emphasize the urgency here. On June 15th, the State of California will ramp up this process. They're going to begin shredding documents and destroying property. I had a client, Gary Kesselman, who wanted to be here. He's dying of cancer. He will be gone in 30 days. The majority of those 8.7 million accounts belong to people over the age of 60 who do not know how to work the Internet, who are in that area that we call the digital divide. People who do not use the Internet would pick up the traditional newspaper publication. But you're dealing with elderly people, impoverished people, people who don't have the educational opportunities that we have. They would have the shot of the publication notice, but they are in that area of digital divide, where we have a 60% penetration of the U.S. population on knowing how to use this Internet. 40% doesn't know how to use it. And that argues in favor of the traditional malign publication notice, backed up by this new advances in the Internet. Maybe someday it will be appropriate when we have 100% penetration. Thank you, sir. Thank you, Your Honor. Taylor v. Chang is submitted. Court is adjourned.
judges: Beezer, Kleinfeld, Hawkins